UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DALE WILLISON,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  21-1520** |
| **NOBLE DRILLING EXPLORATION COMPANY, ET AL.,**<br>    **Defendants** | **SECTION: "E"(1)** |

## ORDER AND REASONS

Before the Court is the motion to remand,[1] filed by Plaintiff Dale Willison. Defendant Kongsberg Maritime, Inc. ("Kongsberg") filed an opposition.[2] Plaintiff filed a reply.[3] The Court has considered the record, the briefs, and the applicable law and now issues its ruling.

## BACKGROUND

Plaintiff Dale Willison was employed as a field engineer for Kongsberg.[4] As part of his employment, Plaintiff alleges he was assigned to perform repair services on certain equipment on a "vessel and fleet of vessels owned and operated by Defendants, Noble Drilling Exploration Company, Noble Drilling (U.S.), LLC, Noble Drilling (U.S.), Inc., and Paragon Offshore Drilling, LLC," (collectively, the "Noble Defendants").[5] Kongsberg had entered into a Master Service Contract, dated October 21, 2003, with the Noble

---

[1] R. Doc. 6.
[2] R. Doc. 8.
[3] R. Doc. 12.
[4] R. Doc. 1-1 ¶ 8, at 21.
[5] *Id.* ¶ 10, at 21.

1

Defendants to provide products and services to the Noble Defendants' vessels.[6] As part of this contract, Kongsberg agreed to indemnify the Noble Defendants from certain claims.[7]

In connection with his employment duties to perform services for the Noble Defendants, Plaintiff travelled by airplane from New Orleans, Louisiana, to Guyana, South America, on or about December 25, 2019.[8] The Noble Defendants were responsible for transporting Plaintiff from the airport to the vessel which he would board to perform his work.[9] When Plaintiff arrived at the airport in Guyana, he was greeted by an agent with a placard bearing the name "Noble."[10] The Noble Defendants provided Plaintiff transportation from the Guyana airport on December 25, 2019, through a company known as Knight Rider Transportation.[11] The Knight Rider Transportation driver drove at a high rate of speed down a two-lane road, frequently swerving in and out of traffic during the trip.[12] At some point during the trip, the driver of the vehicle took evasive action to avoid a washing machine that was present in the lane of travel and, in so doing, swerved into the oncoming lane of travel, causing a head-on collision with a taxi that injured Plaintiff.[13]

On December 28, 2020, Plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans.[14] Plaintiff sued Noble Defendants for negligence under the Jones Act, the general maritime law, and supplemental Louisiana law as well as for

---

[6] *Id.* ¶¶ 47-48, at 47-48. Plaintiff attached the Master Service Contract as an exhibit to his complaint. *Id.* at 52-61.
[7] *Id.* ¶ 50, at 48. The indemnity provision is paragraph 7.1 of the Master Service Contract. *Id.* at 56.
[8] *Id.* ¶ 13, at 22.
[9] *Id.* ¶ 14, at 22.
[10] *Id.* ¶ 15, at 22.
[11] *Id.* ¶ 16, at 22.
[12] *Id.* ¶ 18, at 22.
[13] *Id.* ¶¶ 20-22, at 22-23.
[14] Plaintiff also filed two workers compensation claims against his employer, Kongsberg, within a year of the accident. *Id.* ¶ 23, at 23.

Case 2:21-cv-01520-SM-JVM   Document 17   Filed 11/29/21   Page 3 of 11


breach of their warranty of seaworthiness.[15] However, the Noble Defendants had already filed for bankruptcy in the United States District Court for the Southern District of Texas in July 2020.[16] On January 8, 2021, the Noble Defendants filed a Notice of Suggestion of Bankruptcy in this case stating that Plaintiff's petition was filed in violation of the automatic bankruptcy stay and was therefore void.[17] On May 20, 2021, Plaintiff filed a first amended petition for damages in state court, adding Kongsberg as a defendant and alleging it is liable for Plaintiffs' claims against the Noble Defendants because of the indemnity provision in the Master Service Contract.[18] On June 14, 2021, Plaintiff and the Noble Defendants reached a stipulation in the bankruptcy proceedings by which Plaintiffs' claims against the Noble Defendants were discharged and the bankruptcy stay was lifted in part to allow Plaintiff to pursue his claims solely to the extent he recovers from Kongsberg through indemnity.[19]

On August 11, 2021, the Noble Defendants filed a supplemental notice in state court informing the court of the stipulation.[20] That same day, Kongsberg filed a notice of removal, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(3).[21] On September 27, 2021, Plaintiff filed a motion to remand, arguing his case is not removable because he has alleged a claim under the Jones Act, and Jones Act claims are not removable from state court.[22]

---

[15] *Id.* ¶¶ 2, at 20, ¶¶ 25-40, at 23-24.
[16] *See In re Noble Corp. PLC*, No. 20-33826 (S.D. Tex. Bankr. July 31, 2020); *In re Noble Drilling (U.S.) LLC*, No. 20-33851 (S.D. Tex. Bankr. July 31, 2020); *In re Noble Drilling Exploration Co.*, No. 20-33854 (S.D. Tex. Bankr. July 31, 2020).
[17] R. Doc. 1-1 at 42.
[18] *Id.* at 47-50.
[19] R. Doc. 1-2; *see also In re Noble Corp. PLC*, No. 20-33826, R. Doc. 1187.
[20] R. Doc. 4-1.
[21] R. Doc. 1 at 2.
[22] R. Doc. 6.

## LEGAL STANDARD

Jones Act cases are generally not removable from state court.[23] However, defendants may "pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal."[24] A district court may use a "summary judgment-like procedure" to determine whether it may retain jurisdiction or remand the case.[25] In its evaluation, the district court "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff."[26] The defendant bears the burden of showing "there is no possibility that plaintiff would be able to establish a cause of action."[27] A denial of remand is permissible when the district court "determines that as a matter of law there was no reasonable basis for predicting that the plaintiff might establish liability."[28]

## LAW AND ANALYSIS

Kongsberg makes three arguments to show Plaintiff's Jones Act claim was improperly pleaded:

1) Plaintiff waived his claims against the Union Defendants in the stipulation in the bankruptcy proceedings, and he cannot now collect on those claims from Kongsberg through indemnity.[29]

2) The Jones Act allows recovery for negligence only from a seaman's employer, and Plaintiff alleges Kongsberg, not the Noble Defendants, was Plaintiff's employer.[30]

---

[23] *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir.1995).
[24] *Id.* (citing *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 207 (5th Cir. 1993)).
[25] *Id.* at 176.
[26] *Id.* (citing *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990))
[27] *Id.* (quoting *Lackey*, 990 F.2d at 207).
[28] *Id.* (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549, n. 9 (5th Cir. 1981)).
[29] R. Doc. 8 at 6.
[30] *Id.* at 9-12.

4

> 3) Plaintiff is not a Jones Act seaman because he has no connection to a vessel or identifiable fleet of vessels under common ownership that is substantial in duration and nature.[31]

The Court addresses each of Kongsberg's arguments in turn.

## I. Discharge of a Claim in Bankruptcy Does Not Affect the Liability of a Third-Party Such as Kongsberg.

Kongsberg argues Plaintiff asserts a Jones Act claim against the Noble Defendants, and because Plaintiff's claims against the Noble Defendants were discharged in bankruptcy, Plaintiff cannot now seek to recover on the same Jones Act claim from Kongsberg as the Noble Defendants' indemnitor.[32]

It is well-settled that "discharge and injunction, however, are expressly designed to protect only the *debtor*, and do 'not affect the liability of any other entity' for the debt."[33] "[C]ourts are in 'near unanimous agreement' that § 524(e) 'permits a creditor to bring, and proceed in, an action nominally directed against a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer.'"[34] Kongsberg is not an insurer, but an indemnitor; however, the same reasoning applies. Indeed, the bankruptcy stipulation itself contemplates Plaintiff seeking to recover from Kongsberg for his claims against the Noble Defendants:

> The Injunction is hereby modified solely to allow Claimant [the Plaintiff] to pursue the State Court Litigations to final and binding resolution and/or settlement and collect from Kongsberg (and/or its insurers) pursuant to Indemnity.
> . . . .

---

[31] *Id.* at 12-16.
[32] *Id.* at 6.
[33] *In re Coho Res., Inc.*, 345 F.3d 338, 343 (5th Cir. 2003) (quoting 11 U.S.C. § 524(e)).
[34] *Id.* (quoting *In re Jason Pharms., Inc.*, 224 B.R. 315, 321 (D. Md. Bankr. 1998)); *see also Leger v. Offshore Staffing Servs. of Acadiana LLC*, No. 11-1539, 2013 WL 6075640, at *5 (W.D. La. Nov. 18, 2013).

> Claimant acknowledges and agrees that any recovery of the Claimant against the Noble Parties shall be limited to recovery from Kongsberg (and/or its insurers) pursuant to the Indemnity.[35]

Accordingly, discharge of Plaintiff's claims against the Nobel Defendants in bankruptcy does not bar him from asserting the same claims solely to recover from Kongsberg through indemnity.

## II. An Employer for Purposes of Recovery Under the Jones Act May Be Different from a Plaintiff's Actual Employer.

Kongsberg argues Plaintiff cannot maintain a claim under the Jones Act against the Noble Defendants because he admits in his petition that he was an employee of Kongsberg.[36] Plaintiff argues that, while he stated in his petition he was an employee of Kongsberg, he also alleged he was the employee of the Noble Defendants for purposes of the Jones Act.[37]

"A Jones Act claim . . . requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection."[38] However, an employee may allege that "one who did not sign his checks was in fact his employer" for purposes of the Jones Act.[39] "[A] third person who borrows a worker may become the employer if the borrowing employer assumes sufficient control over the worker."[40] Factors that may indicate sufficient control "include payment, direction, and supervision of the employee. Also relevant is the source of the power to hire and fire. The control which is exercised must be substantial; the mere

---

[35] R. Doc. 1-2 ¶¶ 1, 3.
[36] R. Doc. 8 at 9-12.
[37] R. Doc. 12 at 4.
[38] *Volyrakis v. M/V/ ISABELLE*, 668 F.2d 863 (5th Cir. 1982) (alteration in original) (quoting *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980)), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. On July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987).
[39] *See Guidry*, 614 F.2d at 454.
[40] *Volyrakis*, 668 F.2d at 866 (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)).

possibility of some control over the actions of an employee will not suffice to find an employer-employee relationship."[41]

In this case, Plaintiff alleges that he "was employed by Kongsberg Maritime, Inc."[42] However, Plaintiff also alleges he "was the Jones Act employee of the NOBLE Defendants."[43] Kongsberg has provided an affidavit from Michael Corso, who is the Regional Director, Customer Service Americas, Sensors and Robotics, at Kongsberg.[44] Corso states that Plaintiff was employed as a field engineer by Kongsberg during the periods relevant to this case and that Kongsberg's "field engineers work for [Kongsberg] and are not employees of [Kongsberg's] customers."[45] In addition, the Master Service Contract states, "No Noble Company shall have any right or authority to supervise or give instructions to the employees, agents, or representatives of [Kongsberg], and such employees, agents or authorized representatives shall at all times be under the direct and sole supervision and control of [Kongsberg]," and the contract further states "no relationship of master and servant or principal and agent shall exist between the Noble Companies and the employees, agents, or representatives of [Kongsberg]."[46]

This case is similar to *Lackey v. Atlantic Richfield Co.*, in which the Fifth Circuit held that allegations of a borrowed servant for purposes of Jones Act liability were sufficient to dispute the fact of a plaintiff seaman's employer, even when the defendants offered evidence to the contrary.[47] In that case, the defendants removed the plaintiffs'

---

[41] *Id.* (citing *Guidry*, 614 F.2d at 455); *see also Johnson v. GlobalSantaFe Offshore Servs., Inc.*, 799 F.3d 317, 324-26 (5th Cir. 2015); *Smith v. BP Am., Inc.*, No. 10-00270-CB-M, 2012 WL 12893931, at *2-3 (S.D. Ala. Mar. 21, 2012).
[42] R. Doc. 1-1 ¶ 8, at 28; *see also id.* ¶ 51, at 48.
[43] *Id.* ¶ 12, at 29.
[44] R. Doc. 8-1.
[45] *Id.* ¶¶ 5, 9, 22.
[46] R. Doc. 1-1 at 54.
[47] 990 F.2d at 207-08.

case, which contained a Jones Act claim, arguing the Jones Act claim was fraudulently pleaded because the plaintiff seaman was not the defendants' employee.[48] The defendants submitted affidavits that the plaintiff seaman was not on their payroll.[49] The plaintiffs did not offer evidence but stood by the allegation in their complaint that the plaintiff seaman was a borrowed servant of the defendants.[50] The Fifth Circuit held, "We are not persuaded, however, that defendants' affidavits establish beyond dispute that no borrowed servant employment relationship existed."[51] The court explained, "Plaintiffs alleged that [the plaintiff seaman] was a borrowed servant in the employ of the defendants. Plaintiffs were not required to produce evidence proving that claim at this stage of the litigation. The defendants failed to meet their burden of demonstrating that the allegations were undisputedly false."[52]

In this case, while Kongsberg has offered evidence that Plaintiff was their employee, not the Noble Defendants', Plaintiff disputes that evidence with the allegation in his petition that the Noble Defendants were his Jones Act employer. As in *Lackey*, Kongsberg has not met its burden of demonstrating Plaintiff's employer for purpose of Jones Act liability was undisputed. The Court must resolve all disputed facts in favor of the Plaintiff.[53] Accordingly, the Court finds Plaintiff's Jones Act claim has not been fraudulently pleaded for failure to sue his employer.

---

[48] *Id.* at 207.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 208.
[52] *Id.*
[53] *Burchett*, 48 F.3d at 176.

8

### III. The Court Will Allow the Parties to Submit Supplemental Memoranda and Evidence Regarding Plaintiff's Seaman Status.

Kongsberg argues Plaintiff is not a Jones Act seaman because he has no connection to a vessel or identifiable fleet of vessels under common ownership that is substantial in duration and nature.[54] Plaintiff argues that he states in his petition that he was permanently assigned to a vessel or fleet of vessels, and any disputed facts must be resolved in his favor.[55]

Only seamen may sue under the Jones Act, but Congress has not defined who is a "seaman."[56] Instead, courts have developed a test to determine who qualifies as a seaman under the Jones Act.[57] The Supreme Court has stated:

> [T]he essential requirements for seaman status are twofold. First, . . . an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission. . . . Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.[58]

Under the second prong of the test, for a connection to a vessel to be substantial in duration, a worker must spend at least 30% of his time in service to the vessel or fleet of vessels.[59] The Fifth Circuit has recently held courts should ask the following questions when determining whether connections to a vessel are substantial in nature:

(1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?

(2) Is the work sea-based or involve seagoing activity?

---

[54] R. Doc. 8 at 12-16.
[55] R. Doc. 12 at 4.
[56] *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 569 (5th Cir. 2021) (en banc).
[57] *See id.*
[58] *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)).
[59] *Chandris*, 515 U.S. at 371.

9

> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?[60]

Kongsberg argues Plaintiff does not meet the second prong of the seaman test, connection to a vessel or fleet of vessels that is substantial in both duration and nature. In his petition, Plaintiff alleges his "work was entirely aboard and in service of vessels in navigation, in particular drillships in the navigable water."[61] He further alleges, "As part of Plaintiffs' employment, Plaintiff was assigned to work aboard a vessel and fleet of vessels owned and operated by Defendants."[62] He then states he was a Jones Act seaman.[63] Plaintiff provides no other facts concerning his connection to a vessel. Unlike with the issue of employment discussed above, Plaintiff does not specifically allege any facts concerning the duration or nature of his employment on the Noble Defendants' vessels.

On the other hand, Kongsberg has offered evidence in the Corso affidavit, accompanied by Plaintiff's timesheets, that Plaintiff spent less than 1% of his employment aboard the Noble Defendants' vessels.[64] Corso also attests, referencing attached service reports prepared by Plaintiff and Plaintiff's official job description, that Plaintiff was sent to perform the discrete task of servicing a component on the Noble vessels and left, without any obligation to return.[65]

Currently, Plaintiff alleges no facts and offers no evidence to dispute the evidence offered by Kongsberg. He relies only on the factually unsupported conclusion in his

---

[60] *Sanchez*, 997 F.3d at 574 (footnote omitted).
[61] R. Doc. 1-1 ¶ 8, at 21.
[62] *Id.* ¶ 9, at 21.
[63] *Id.* ¶ 10, at 21.
[64] R. Doc. 8-1 ¶¶ 18-20; *see also id.* at 9-22, 24.
[65] *Id.* ¶¶ 13-15, 23-25; *see also id.* at 7-8, 12-23.

10

petition that he is a seaman. That conclusion is insufficient. The Court finds it appropriate to allow Plaintiff a chance to submit evidence in support of his alleged seaman status. Accordingly, the Court will allow Plaintiff to submit a supplemental memorandum in support of his motion to remand, specifically addressing his alleged seaman status and the facts set forth in Michael Corso's affidavit, with supporting affidavits or other documents that would be admissible at trial. The Court will also allow Kongsberg to file a supplemental opposition to any supplemental memorandum Plaintiff files.

## CONCLUSION

**IT IS ORDERED** that the Court's ruling on Plaintiff Dale Willison's motion to remand[66] is **DEFERRED** to give the parties a chance to submit supplemental memoranda concerning Plaintiff's seaman status.

Plaintiff Dale Willison may file on or before **December 13, 2021**, a supplemental memorandum in support of his motion to remand, specifically addressing his alleged seaman status and the facts set forth in Michael Corso's affidavit,[67] with supporting affidavits or other documents that would be admissible at trial.

Defendant Kongsberg Maritime, Inc. may file on or before **December 22, 2021**, a supplemental opposition in response to any supplemental memorandum Plaintiff files, with supporting affidavits or other documents that would be admissible at trial.

**New Orleans, Louisiana, this 29th day of November, 2021.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] R. Doc. 6.
[67] R. Doc. 8-1.